UNITED STATES of America, Plaintiff-Appellee,

v.

Bobby COCHRAN, a/k/a "Sundance", Teddy Doyle Butler and Bobby Fred Williamson, Defendants-Appellants.

No. 82–4164.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1983.

Rehearing and Rehearing En Banc Denied March 7, 1983.

Grady F. Tollison, Jr., Oxford, Miss., John B. Farese, Ashland, Miss., for defendants-appellants.

Glen H. Davidson, U.S. Atty., Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GOLDBERG, GEE and HIGGIN-BOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Bobby "Sundance" Cochran, Teddy Doyle Butler, and Bobby Fred Williamson were convicted by a jury for conspiring to distribute and distributing cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Cochran also was convicted for distributing one ounce of cocaine in violation of § 841(a)(1). They now urge: (1) that the district court admitted co-conspirators' statements without obtaining independent evidence of an ongoing conspiracy; (2) that the proof at trial varied from the indictment; (3) that the jury's inspection of transcripts of an inadmissible recording caused reversible error; (4) that the government's failure to produce discoverable material deprived them of their right to a fair trial; (5) that the prosecutor's description of cocaine as "white death" caused reversible error; and (6) that the district court improperly admitted photographs of them taken after their arrest. Finally, they urge that the sum of the errors is prejudicial even if they were harmless when viewed singly. Finding no merit in these contentions, we affirm.

Danny Burns, a convicted cocaine dealer and government informant, introduced Bobby Cochran to an undercover agent from the Mississippi Bureau of Narcotics in August 1981. Working with the Alabama Bureau of Investigation and the Federal Drug Enforcement Administration, two Mississippi undercover agents met Cochran on September 11, 1981 in a motel in Muscle Shoals, Alabama. While the agents and Cochran were discussing a potential drug purchase, Bobby Fred Williamson arrived and was introduced to the agents as Cochran's "boss." Williamson told the agents about the quantity, quality, and price of cocaine he would be able to deliver. He also indicated that he would "find somebody to fix these people up."

Nothing happened until November when Dennis McAnally, a Mississippi agent, had several telephone conversations with Cochran and finally purchased one ounce of cocaine from Cochran on November 5. McAnally then told Cochran that he was interested in purchasing a kilo of cocaine. Despite an aborted attempt to purchase the

kilo on November 19, McAnally maintained telephone contact with Cochran.

On December 21, McAnally called Cochran and arranged a meeting in Oxford, Mississippi. McAnally, accompanied by two other Mississippi agents, met Cochran, Williamson, and Teddy Doyle Butler in a parking lot around 11:30 p.m. The group then drove to a motel where Cochran and McAnally went to a "money room" and Williamson, Butler, and the other two agents went to a "coke room." Williamson, accompanied by an agent, left the room, drove to a pay telephone, and arranged for a sample of the kilo to be brought to the room for testing. Wayne Barley, a friend of Williamson's, then brought the sample to the room and "snorted" some of it with Williamson and Butler.[1] After Barley left to pick up the kilo, Williamson and an agent unsuccessfully attempted to meet him. Upon returning to the room, Williamson ordered Butler to hold the sample over the toilet in case of a raid. He then left again to find Barley. Meanwhile, Barley brought the kilo to the room. Williamson returned around 3:30 a.m. and shortly thereafter all four men were arrested.

At trial, Cochran claimed entrapment, testifying that Danny Burns induced him to sell cocaine at a time when he was short of money. Cochran also testified that his co-defendants did not know he was transporting the kilo to Mississippi until they arrived in Oxford. It was then, he claimed, that they decided to assist Cochran with the delivery because they were "good friends."

### Co-Conspirators' Statements

Appellants launch an attack against the district court's admission of statements as made during the course and in furtherance of a conspiracy under Fed.R.Evid. 801(d)(2)(E). The argument is broadly cast. Appellants do not specify which statements are claimed to have been improperly admitted but instead contend that Rule 801(d)(2)(E) was not available at all because

the government failed to prove "by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. James,* 590 F.2d 575, 582 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

A finding of independent evidence to support a conspiracy will not be overturned on appeal unless clearly erroneous. *United States v. Rodriguez,* 689 F.2d 516, 518 (5th Cir.1982); *United States v. Dean,* 666 F.2d 174, 179 (5th Cir.), *cert. denied,* —— U.S. ——, 102 U.S. 2300, 73 L.Ed.2d 1303 (1982). The district court allowed the statements after considering the *James* standards in both a pretrial hearing and at the end of the trial. Because we conclude that the government presented ample independent evidence of an ongoing conspiracy in which all three appellants were members, we cannot regard the district court's findings as clearly erroneous. We turn to that review.

This circuit has long rejected the proposition that "mere presence" at the scene of a crime is alone sufficient proof of the requisite agreement, *see United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982), while simultaneously holding that participation in a conspiracy may be inferred from " 'a development and a collocation of circumstances.' " *United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982) (*quoting United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied sub. nom. Bertolotti v. United States,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979)). The negotiation at the Muscle Shoals motel on September 11 was sufficient to prove an infant conspiracy that then involved Cochran and Williamson. With a conspiracy

---

1. Although Barley was tried and convicted with Cochran, Williamson, and Butler, he is not a party to this appeal.

adequately subscribed on September 11, "the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy." *United States v. Torres,* 685 F.2d 921, 926 (5th Cir.1982) (*quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Statements of Cochran and Williamson thus were admissible against each other and against Butler who later joined the conspiracy. That joinder was evidenced by a participation in the drug sale that was more than "mere presence." The district court's ruling under Rule 801(d)(2)(E) was not clearly erroneous.

### Variance

The indictment charged that a conspiracy began "on or about November 1, 1981." The admission of co-conspirators' statements, made largely in November, rested on a conspiracy that began some fifty days earlier on September 11. Appellants characterize this difference as one between the dates of the conspiracy charged in the indictment and the conspiracy proved at trial and assert that it is a "fatal variance" that prejudiced the preparation of their defense. We disagree.

In this circuit, "an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'" *Russell v. United States,* 429 F.2d 237, 238 (5th Cir.1970) (*quoting* 1 Wright, Federal Practice and Procedure, § 125 at 247). We thus held in *United States v. Tunnell,* 667 F.2d 1182, 1186 (5th Cir.1982), that evidence of acts of bribery from October 1973 to March 1974 was admissible even though the indictment had charged defendant with bribery "on March 2 or 3, 1974." We reached a similar result in *United States v. Grapp,* 653 F.2d 189, 195 (5th Cir.1981), in which evidence referring to the middle of 1977 was admitted despite the indictment's charge of acts "on or about May 27, 1977."

With variance, our concern is whether the indictment, assuming it has otherwise alleged the elements of the offense, has so informed a defendant that he can prepare his defense without surprise and has protected him against a second prosecution for the same offenses. *United States v. Hall,* 632 F.2d 500, 504 (5th Cir. 1980). Related concerns are raised by an inquiry into the reasonableness of differences between alleged and proved times of offenses, when time is not an element and we have said no variance exists, and the two-faceted inquiry into legality of a variance. That is, the concerns raised by a variance inform the inquiry into reasonable limits of the on or about allegation when time is not an element of the offense.

As these cases suggest, we have been hazy in defining any difference in analysis between proof and allegation of elements as distinguished from non-elements. They traverse similar factual terrain. Even when time is not an element of the charged offense, it nonetheless carries part of an indictment's notice load. A defendant must be given notice of the charge he is to defend. Adequacy of notice is not measured in technical pleading terms but by a pragmatic inquiry by the trial judge into whether on the facts of the case at issue the defendants knew what they were defending. Against this background, we conclude that the times proved here were within the reasonable limits of the on or about allegation.

The government's use of the on or about designation here informed appellants of the relationships and transactions at issue and thus gave notice of the conspiracy that was proved. In so deciding we eschew a simple count of days. The width of the time window opened by an on or about allegation cannot be abstractly measured. The record shows that counsel were fully aware of the September 11 negotiations in the Muscle Shoals motel. Indeed, the defendants presented evidence of a meeting between Cochran and an undercover agent

as early as August. In the vernacular, having been caught with the "motherlode" and explicitly charged with the conspiracy leading to its delivery, they are in no position to complain that the government offered proof of the conspiracy's birth.

*Transcript*

■ Appellants contend that the district court should have granted a mistrial after the jury viewed a transcript of a taped conversation between agent McAnally and Cochran that later was ruled inadmissible due to its lack of clarity. We find no merit in this contention. In a similar situation, this court declined to find prejudicial error when tape-recorded material, excluded from evidence, mistakenly was included in a transcript given to the jury. *United States v. Colacurcio,* 659 F.2d 684, 687 n. 2 (5th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 U.S. 1635, 71 L.Ed.2d 869 (1982). In light of the compelling evidence of guilt here, the jury's brief access to the transcript, the judge's immediate instruction to disregard it, and appellants' full opportunity to examine McAnally's recollection of the tape's content, we find no abuse of discretion in the court's refusal to grant a mistrial.

*Nondisclosure of Discoverable Information*

Appellants assert that the government's failure to produce discoverable materials in response to motions filed under Fed.R. Crim.P. 16(a)(1) and under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) caused reversible error. The claim is that the government erred in not producing before trial a tape recording of a conversation between McAnally and Cochran, four tapes claimed to be either lost or destroyed, and the identity of an informant and his arrangement with the government. These claims will be examined separately.

a. *The Brown Tape*

■ Appellants maintain that the government was required by Rules 16(a)(1)(A) and (C) to provide a tape recording of the September 11 conversation be-

tween Cochran and McAnally and that its failure to do so before the third day of trial hindered their preparation of the entrapment defense. The government argues that because the tape was in the custody of agent Bob Brown of the Alabama Bureau of Investigation and it had no knowledge of its existence until the third day of its case-in-chief, it had no duty to provide it.

We need not face the general issue of the extent of the federal government's duty to produce evidentiary material in the hands of a state investigating agency because we conclude that not producing the Brown tape before trial did not deprive appellants of substantial rights. See Fed.R.Crim.P. 52(a). We note at the outset that the Brown tape did not contain exculpatory statements but was in fact incriminating of defendants. We face then, not a *Brady* issue, but a case similar to *United States v. Arcentales,* 532 F.2d 1046 (5th Cir.1976), where "the existence of the inculpatory statements became known during the government's case-in-chief ... [and] ... [t]he government was not lying in wait with statements that could impeach the defendant if he decided to testify." *Id.* at 1050. Moreover, because defense counsel learned the substance of Cochran's statements through McAnally's testimony and became aware of the tape before presenting their defense, "[w]e are not here concerned with such vital matters as a defendant's decision to take the stand, which might result in substantial and irrevocable prejudice." *Id.* (quoting *United States v. Cirillo,* 499 F.2d 872, 883 (2d Cir. 1974), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974)). Finally, the strength of the evidence against Cochran minimizes the importance of the Brown tape to preparation of his entrapment defense. As in *Arcentales,* defendants were not prejudiced by undisclosed inculpatory statements because "[t]he evidence of guilt was formidable and the ... story totally incredible." *Id.* at 1051.

The veteran district court also took ample precautions to minimize any prejudice to appellants. After the government discovered through McAnally's testimony that the

tape existed, he ordered its production, excluded it from the government's case-in-chief, and offered to delay the trial to permit defense counsel to prepare their entrapment defense and to present reasons why the tape should be excluded from any rebuttal by the prosecution. Defense counsel after listening to part of the tape and apparently learning that it held little hope for them, made the best of a deteriorating defense. They stated that they would have "no problem" with the tape if it was not admitted. The government agreed not to use it, at least in its case, and the trial resumed. The prosecution never offered the tape into evidence. Appellants have not articulated any prejudice from the episode. Their contention that the district court's discovery ruling afforded them an inadequate opportunity to prepare is without merit.

b. *The "Missing" Tapes*

Appellants also contend that the government's failure to produce four tape recordings of conversations held on December 20 and 21 substantially impaired their ability to prepare a defense. Despite appellants' description of the problem as involving "four missing tapes," the record indicates that only one taped conversation was not produced. It was inaudible and later was erased. In contrast, the other three conversations were never taped at all.[2] Like the Brown tape, we conclude that nondisclosure of both the erased tape and the three oral statements did not deprive them of their right to a fair trial.

 We need not decide whether appellants were prejudiced by nondisclosure of the three oral statements because the government had no duty to disclose them. Rule 16(a)(1)(A) requires the government to

disclose the substance of any oral statement made by the defendant "in response to interrogation by any person *then known* to the defendant to be a government agent." There is no question that Cochran did not know McAnally was a government agent when they spoke on December 20 and 21. Cochran's statements thus do not come within the range of the rule. *See United States v. Navar,* 611 F.2d 1156, 1158 (5th Cir.1980).

 The government arguably had a duty to produce the inaudible tape of the December 21 conversation, *see United States v. Gordon,* 580 F.2d 827, 837 (5th Cir.1978), a matter we do not decide, because its failure to do so here was beyond question not reversible error. That conclusion flows from our focus on "the degree of negligence or bad faith on the part of the government, the importance of the evidence lost, and the evidence of guilt adduced at trial." *Armstrong v. Collier,* 536 F.2d 72, 78 (5th Cir.1976) (*citing United States v. Bryant,* 439 F.2d 642, 651 (D.C.Cir.1971)). *See also United States v. Miranne,* 688 F.2d 980, 988–89 (5th Cir.1982). Appellants do not contend that the government destroyed the inaudible tape to gain an advantage and they do not point to any negligence. Moreover, they do not explain the importance of the tape. The district court credited the agent's testimony that the tape was unintelligible and there is nothing in the record to justify our rejection of that conclusion. Appellants' opportunity to cross-examine the agents who witnessed the conversation thus was more valuable to them than an inaudible tape. Finally, we return, as we must in deciding if there was any prejudice, to the reality that the government's evidence against appellants was overwhelm-

2. Lieutenant Randy Corban of the Mississippi Bureau of Narcotics testified about the inaudible taped conversation and Agent Dennis McAnally explained why the other three conversations were never taped. Corban testified that he wore a body recorder when he met appellants in the Oxford parking lot on December 21 but that he later removed it because he feared Williamson might search him. The taped portion, however, turned out to be inaudible so the tape later was erased. As to the three unrecorded conversations, McAnally explained that he did not have a tape recorder at home on December 20 when he spoke with Cochran. Although he did have one the next day, its batteries were low and it did not record their conversation. Finally, he testified that their third telephone conversation took place at his captain's house and that no recorder was available.

ing. We conclude that the nondisclosure of the December 21 tape, if error at all, was not of such magnitude as to mandate reversal.

c. *Informant's Identity and Arrangement*

Appellants made a broad discovery request for the names of all persons with knowledge of the allegations, for all exculpatory material, and for a statement of any promises made to potential government witness. They now contend that the government improperly withheld requested information concerning the identity of its informant and the nature of its arrangement with him in violation of the principles established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Brady,* which holds that suppression of requested information favorable to an accused violates due process, is based in part on the defendant's need to know any exculpatory evidence. *Id.* at 87–88, 83 S.Ct. at 1196. The government did not identify Burns before trial but its failure to obey *Brady* does not compel reversal when, as here, the defense was able to adequately prepare its case. *See United States v. Joseph,* 533 F.2d 282, 286–87 (5th Cir.1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977) (applying harmless error rule to a *Brady* violation).

The record shows that defense counsel knew before trial that Danny Burns was the informant. In fact, counsel successfully petitioned for a writ of habeas corpus testificandum against Burns one week before trial. Although counsel did not similarly discover before trial the nature of Burns' deal with the government, the government's witnesses testified on cross-examination that Burns received reimbursement for his expenses but was not paid on a contingent fee basis. The witnesses could not agree on the precise amount of reimbursement, but the basic nature of the agreement with Burns was made known to the appellants before presentation of their case. In a similar situation, this court held in *United States v. Felts,* 497 F.2d 80 (5th

Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974), that a defendant had an adequate opportunity to prepare his entrapment defense even though information about the informant was first revealed in the government's case-in-chief. *See also United States v. Joseph,* 533 F.2d at 286–87. Moreover, Burns played a minor role in most of the investigation and was not called to testify at trial. As we stated in *United States v. Prout,* 526 F.2d 380, 388–89 (5th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976), if the reliability of an informant is not "determinative of guilt or innocence," the "failure to disclose every particular of a deal ... falls within the harmless error doctrine...." *See also United States v. Joseph,* 533 F.2d at 287.

*Prosecutor's Statements*

Appellants argue that the prosecutor caused reversible error when he described the kilo of cocaine as a "sack of white death." This remark should not have been made. It does not follow, however, that it affected substantial rights of the appellants. *United States v. Hughes,* 658 F.2d 317, 323 (5th Cir.1981). We do not view juries as emotional slot machines and do not suppose them to be so. Instead we review this type of hyperbolic statement with some level of confidence in the maturity of twelve citizens selected to sit in a federal criminal trial. We agree with the district court that the statement was an isolated incident and given the overwhelming evidence of guilt was indisputably harmless.

In *Hughes,* the prosecutor told the jury that the defendant looked and acted like a drug dealer. Rejecting the contention that the remark was grounds for a new trial, we held, "In light of the fact that this was an isolated instance and in view of the overwhelming evidence against the defendant, we have no difficulty in concluding that the prosecutor's remarks were not so prejudicial as to require a new trial." *Id.* at 323. Unspoken but underlying this familiar phrasing of denied error is the common sense judgment that telling the jury that the defendant "looks like a drug dealer" is

unlikely to trigger a juror stampede. We condemn the remark nonetheless. The insincere remark may prompt an equally insincere motion for mistrial followed by a "boys-will-be-boys" denial and an appellate admonishment. The criminal trial is no place for this farce and the prosecutor has no business leading scene one by playing the fool.

Regardless, the prosecutor and the court took immediate steps to eliminate any prejudice. After defense counsel objected, the prosecutor promptly withdrew the question before it could be answered and properly phrased it. The court also instructed the jury that remarks made by lawyers were not to be considered as evidence. The use of similar precautions caused us to hold in *United States v. Mack,* 643 F.2d 1119, 1124 (5th Cir.1981) that an improper remark by a prosecutor was harmless error. *See also United States v. Milstead,* 671 F.2d 950, 953 (5th Cir.1982). We reject appellants' claim of error.

### *Photographs*

■■■ Appellants final contention is that the district court erroneously admitted photographs taken at the time of their arrest and showing them in an unkempt condition. That contention must be measured against the standard that a trial court's rulings on the admission of relevant evidence will not be disturbed in this circuit absent an abuse of discretion. *United States v. Brown,* 547 F.2d 1264, 1266 (5th Cir.1977). We cannot find such abuse here. Although appellants' identities were not at issue here, the photographs showed how they had altered their appearance since the time of arrest. Surely when a defendant appears at trial dressed in his Sunday best the prosecutor is entitled to show his appearance when arrested. Their appearance at the time of arrest was consistent with the government's case—that these defendants drove through most of a night to "do a

drug deal." Appellants suggest that those events were not contested at trial. We know now that was the case but the government was not required to anticipate how the defendants would play their trial hand. We cannot conclude that the photographs fell outside the definition of "relevant evidence" in Fed.R.Evid. 401.

We also cannot find that their probative value, while not great, was "substantially outweighed by the danger of unfair prejudice" under Fed.R.Evid. 403. The photographs were taken at the time of arrest and they did not indicate any prior criminal activity. Thus, the possibility of prejudice was remote. *See United States v. Fosher,* 568 F.2d 207, 213 n. 22 (1st Cir.1978) (opinion by Tuttle, J.); *Cf. United States v. Rixner,* 548 F.2d 1224 (5th Cir.), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977) (admission of five mug shots, four of which had information on backs concerning prior criminal records, prejudiced the defendant with no prior record). We find that the district court did not abuse his discretion in admitting the photographs.

■■■ Finally, we reject appellants' argument that the "cumulative effect of prejudice" arising from the photographs and the "white death" statement mandates reversal. These incidents did not occur together. They were separated by more than one trial day. The incidents cannot be regarded, singly or cumulatively, as having an improper effect on the jury's verdict. At the same time, we acknowledge the principle of synergistic prejudice and are willing to examine sums and multiples when they are presented. The result here, however, does not change. These defendants were caught red-handed. Their only available defense was entrapment which the district court generously, in our view, submitted to the jury under an instruction about which no complaint is made.[3]

---

3. Appellants did urge, however, for the first time at oral argument that the evidence shows Cochran's entrapment as a matter of law. We reject that contention. This court recognizes that "the question of entrapment, if fairly raised, is one for the jury." *United States v. Lentz,* 624 F.2d 1280, 1286 (5th Cir.1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981) (*quoting United States v. Benavidez,* 558 F.2d 308, 310 (5th Cir.1977)). If Cochran

For the reasons stated above, we reject the grounds of error raised by Cochran, Williamson, and Butler, and affirm their convictions.

AFFIRMED.

produced sufficient evidence of inducement, the government's evidence of his predisposition was sufficient to support the jury's rejection of the entrapment defense. The record shows Cochran's willing, knowing, and voluntary participation in the scheme to sell cocaine. *See United States v. Lentz,* 624 F.2d at 1287. We cannot conclude that any evidence in his favor was "so overwhelming" as to establish entrapment as a matter of law. *See United States v. Groessel,* 440 F.2d 602, 606 (5th Cir.), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 712 (1971).