**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 99-10932**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**JULIE JOHNSON; RAYMOND BULLARD, also known as Frosty;**
**and ROY LEE BRADFORD,**

**Defendants-Appellants.**

---

Appeals from the United States District Court
For the Northern District of Texas
(4:98-CR-217-13-Y)

---

February 22, 2001

Before HIGGINBOTHAM and DeMOSS, Circuit Judges, and KENT,[*] District Judge.

PER CURIAM:[**]

Defendants-Appellants Julie Johnson, Raymond Bullard, and Roy Lee Bradford (collectively "the appellants") appeal their convictions and sentences arising from various drug-related

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violations.  Because the district court did not commit reversible error, we affirm.

## I. BACKGROUND

On December 22, 1998, a grand jury returned a 42-count indictment against the appellants and several other individuals. The indictment charged the appellants as members of a wide-ranging conspiracy to distribute quantities of crack, powder cocaine, and heroin.

Ultimately, the three appellants were tried together and were convicted and sentenced on various counts.  To establish their guilt, the government submitted, among other things, tapes of telephone conversations between the appellants and other co-conspirators, suggesting the sale and distribution of controlled substances.  In addition, the government's case included evidence seized by the police from a traffic stop of Bullard's vehicle. That evidence consisted of several grams of crack, cocaine, and heroin, which were discovered behind the vehicle's dashboard by a canine unit.[1]

Both Bradford and Bullard were found guilty of conspiracy to possess with intent to distribute, possession with intent to distribute, and use of a communication facility to facilitate the commission of the conspiracy.  As for Johnson, the jury was unable

---

[1]Bullard filed a motion to suppress, which the district court denied.

to reach a verdict with respect to the conspiracy count, but found her guilty of two counts of use of a communication facility to facilitate the commission of the conspiracy.[1]

This appeal followed.

## II. DISCUSSION

The individual appellants each raise various points of error. We review them in turn.

A.    Bullard

Bullard raises four issues on appeal.  First, Bullard maintains that the district court erred in admitting evidence that he contends was obtained in violation of the Fourth Amendment. Second, Bullard challenges the admission of Carl Roberts' testimony, which he believes was prejudicial and inflammatory in contravention of Federal Rule of Evidence 404(b).[2]  Third, he challenges the sufficiency of the evidence to sustain his conspiracy conviction.  Finally, he insists that the district court erred when it refused to grant a downward departure under the sentencing guidelines.

1.    The Stop And Seizure Did Not Violate The Fourth Amendment

With respect to his first point of error, Bullard charges that

---

[1]The indictment did not charge Johnson with possession with intent to distribute.

[2]Bradford raises this same issue on appeal.

the stop and search of his vehicle by Officer Richard Van Houten, Jr., amounted to a Fourth Amendment violation. He makes three arguments in support of such a conclusion. Initially, Bullard maintains that the stop was pretextual and that Officer Van Houten's motives transformed the stop into an unreasonable seizure under the Fourth Amendment. Next, he argues that the duration of his detention was unreasonable under the Fourth Amendment. Lastly, Bullard attempts another pretext argument, insisting that the search was an inventory search, which cannot be conducted under a heightened level of pretext as was allegedly the case here.

In situations involving a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error. *United States v. Dortch*, 199 F.3d 193, 197 (5th Cir. 1999). Moreover, we view the evidence in the light most favorable to the party that prevailed in the district court. *Id.*

Under the Fourth Amendment, people have the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The temporary detention of an individual during an automobile stop constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 116 S. Ct. 1769, 1772 (1996). As a result, an automobile stop is subject to the constitutional imperative that it not be unreasonable under the circumstances. *Id.*

4

Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* Here, Bullard concedes that Officer Van Houten had probable cause to believe that he had incurred a traffic violation due to his cracked windshield. *See* Tex. Trans. Code Ann. § 547.613(a)(1) ("[A] person commits an offense that is a misdemeanor if the person operates a motor vehicle that has an object or material that is placed on or attached to the windshield . . . that obstructs or reduces the operator's clear view . . . ."). Nevertheless, he believes that the traffic violation was merely a pretext and that Officer Van Houten only wanted to search for drugs. In *Whren*, however, the Supreme Court held that the constitutional reasonableness of traffic stops did not depend on the actual motivations of the individual officers involved. *Whren*, 116 S. Ct. at 1774. That holding squarely forecloses the first basis of Bullard's argument that the stop and search violated the Fourth Amendment.

Likewise, Bullard's second basis for a Fourth Amendment violation is unavailing. He argues that the duration of his detention was unreasonable under the Fourth Amendment, but the facts do not support his contention. Upon being stopped, Officer Van Houten sought Bullard's driver's license and insurance information. Within no more than five minutes of that stop and before Officer Van Houten completed a citation for the traffic

5

violation, he obtained verbal consent from Bullard to search the vehicle. About five to ten minutes later, a canine unit arrived and examined his vehicle, finding several grams of various controlled substances.

In two recent cases, we addressed the issue of when the duration of an automobile stop transformed it into an unreasonable detention in violation of the Fourth Amendment. *See **United States v. Jones***, 234 F.3d 234 (5th Cir. 2000); ***Dortch***, 199 F.3d 193. In both of those cases, the officers held the defendants for a prolonged period of time, including several minutes after the purpose for the stop, which had initially justified the interference, had been fulfilled. *See **Jones***, 234 F.3d at 241; ***Dortch***, 199 F.3d at 198. Here, the purpose of the stop had not been completed, as Officer Van Houten had yet to mete out the citation, when Bullard gave consent to search his vehicle. Thus, the instant case is outside the parameters of our precedent affording protection against unreasonable detentions that violate the Fourth Amendment.

Bullard's third basis for finding a Fourth Amendment violation merits even less attention. That argument essentially posits that Officer Van Houten's search of the vehicle was an inventory search and that such searches cannot be done under a pretext. The Supreme Court has observed that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."

6

*Florida v. Wells*, 110 S. Ct. 1632, 1635 (1990). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims or loss or damage." *Whren*, 116 S. Ct. at 1773 n.1. The instant case does not involve an inventory search. Consequently, any argument that an inventory search cannot be accomplished under a pretext has no bearing on this case.

2.    The Admission Of Roberts' Testimony Was Not An Abuse Of Discretion

Bullard's and Bradford's second point of error is that the district court erred in admitting Roberts' testimony at trial. Roberts supplied drugs to several of the alleged conspirators and testified about drug transactions involving Bullard from 1994 through 1996 and Bradford from 1992 to 1997. Both Bullard and Bradford contend that because much of Roberts' testimony concerned activities that predated many of the events in the present case, that testimony was extrinsic to the charges in the indictment. As a result, they charge that his testimony should not have been admitted under Federal Rule of Evidence 404(b).

We review the district court's decision to admit Roberts' testimony for an abuse of discretion. *United States v. Garcia Abrego*, 141 F.3d 142 (5th Cir. 1998). Rule 404(b) provides in pertinent part that "[e]vidence of others crimes, wrongs, or acts is not admissible to prove the character of a person in order to

7

show action in conformity therewith." Such evidence, however, may be allowed for a litany of other reasons, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. 404(b). Moreover, "[u]ncharged offenses arising from the same transaction or series of transactions charged in the indictment . . . are not barred by the rule." *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995). "More specifically, evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence." *Id.* Thus, to avoid the strictures of Rule 404(b), the government must suggest a "logical hypothesis of the relevance of the evidence for a purpose other than to demonstrate propensity to act in a particular manner." *Id.*

We believe the government has done that. The government maintains that Roberts' testimony alluded to acts that were not extrinsic but that were part and parcel of the charged conspiracy. Roberts purchased drugs from Bradford and sold them to Bullard, helping form the foundation of the conspiracy charged in the instant case. Roberts' testimony revealed how the conspiracy developed and how he helped establish several of the conspirators' relationships. Accordingly, we find no abuse of discretion by the district court.

3. There Was Sufficient Evidence To Convict Bullard

8

Although Bullard argues that the government failed to produce sufficient evidence that he was involved in a conspiracy, the focus of his ambiguous brief seems to be that there was a variance between the allegations in the indictment and the evidence supporting the conspiracy count. Bullard asserts that the indictment alleged a singular conspiracy but that the evidence proved multiple conspiracies. According to Bullard, that variance requires reversal.

We review a claim of variance for harmless error and will reverse only if a defendant shows that his substantial rights were prejudiced. *United States v. Lokey*, 945 F.2d 825, 832 & n.1 (5th Cir. 1991). "'With variance, our concern is whether the indictment, assuming it has otherwise alleged the elements of the offense, has so informed a defendant that he can prepare his defense without surprise and has protected him against a second prosecution for the same offenses.'" *Id.* at 832 (quoting *United States v. Cochran*, 697 F.2d 600, 604 (5th Cir. 1983)). A material variance may occur when the variation between proof and indictment does not effectively modify an essential element of the offense charged. *Id.* To require reversal based on variance between the proof and indictment, Bullard must prove: 1) that the evidence at trial actually established more than one conspiracy, and 2) that the variance affected a substantial right. *United States v. Franklin*, 148 F.3d 451, 459 (5th Cir. 1998).

9

Having reviewed the record, we see no material variance that affected a substantial right.  Although Bullard contends that, besides Bradford, he did not interact with any other alleged conspirator, "'[t]here is no requirement that every member must participate in every transaction to find a single conspiracy.'" *United States v. Morris*, 46 F.3d 410, 416 (5th Cir. 1995) (quoting *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987)). A single conspiracy may exist where a key man is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal.  *Id.* The evidence revealed that Bradford played a central role in distributing drugs to the alleged conspirators, including Bullard, who then resold those drugs.  Those alleged conspirators all had the common goal of deriving "personal gain from the illicit business of buying and selling cocaine" and other drugs.  *Id.* at 415.  Finally, even if what the government proved was not actually a single conspiracy, the indictment sufficiently apprised Bullard to afford him the opportunity to present a defense, and no prejudice resulted.

> 4.    There Is No Jurisdiction Over Bullard's Appeal Of His Sentence

Bullard's final point of error concerns the district court's refusal to grant a downward departure under the sentencing guidelines.  Statutorily, we have jurisdiction to review a defendant's challenge of his sentence in any of four situations: 1)

10

if the sentence was imposed in violation of law; 2) if the sentence was imposed as a result of an incorrect application of the guidelines; 3) if the sentence was due to an upward departure; and 4) if the sentence was imposed for an offense not covered by the guidelines and is plainly unreasonable. 18 U.S.C. § 3742(a); ***United States v. DiMarco***, 46 F.3d 476, 477-78 (5th Cir. 1995). Furthermore, "appellate review is available for claims that the district court erroneously believed that it lacked authority to depart from the sentencing guideline range." ***Id.*** at 478. Bullard makes no such claims. He bases his appeal for a downward departure on his age and ill health. That does not suffice to confer jurisdiction, and this issue is dismissed for lack of jurisdiction.

B.   Bradford

Besides the identical issue concerning Roberts' testimony that we found unavailing in Bullard's appeal, Bradford contends that the district court should have only held him accountable for less than 250 milligrams of cocaine base instead of the 79,400.97 kilograms of marijuana equivalency for which he was sentenced. He presents two arguments for this proposition: 1) there was no direct evidence tying him to any of the drugs, unlike with his co-defendants who were found in possession of large quantities; and 2) the witnesses who testified that he possessed large quantities of drugs were unreliable.

11

We review the district court's interpretation or application of the guidelines de novo and its factual findings for clear error. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). "As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous." *Id.*

Upon reviewing Bradford's arguments and the record, we find no clear error on the part of the district court. Bradford was convicted of several counts of possessing cocaine, cocaine base, and heroin. Those convictions could not have been predicated solely on the trace drugs that were found in Bradford's garbage and that totaled 250 milligrams. The jury must have credited some of the so-called unreliable testimony against Bradford to find him guilty of those possession counts. Hence, the district court did not clearly err in considering those witnesses' testimony. Indeed, a sentencing court may rely on the debriefings of co-defendants in assessing a defendant's sentence. *See United States v. Posada-Rios*, 158 F.3d 832, 879 n.24 (5th Cir. 1998). Furthermore, there was corroborating evidence, in the form of taped telephone conversations, that implicated Bradford in the drug transactions. Consequently, the district court did not clearly err when it attributed the 79,400.97 kilograms of marijuana equivalency to Bradford when it computed his sentence.

C. Johnson

12

Johnson raises two issues on appeal. Her first issue charges that there was insufficient evidence to convict her as to the two counts for use of a communication facility, i.e., a telephone, to facilitate the commission of the conspiracy to distribute a controlled substance. Second, she maintains that the district court should have held her responsible only for 31 grams of cocaine base, rather than the 226 grams for which she was sentenced.

1.   There Was Sufficient Evidence To Convict Johnson

With respect to the first point of error, Johnson proffers three arguments. First, she maintains that because the jury failed to convict her on the conspiracy charge, there could not have been sufficient evidence to convict her of the using a telephone in furtherance of a drug conspiracy counts. Similarly, she insists that the jury's failure to convict her on the conspiracy count establishes the jury's disbelief of some of the government witnesses whose testimony supported the use of a telephone in furtherance of a drug conspiracy counts. Finally, Johnson independently attacks the credibility of those witnesses.

In reviewing challenges to the sufficiency of the evidence, we view the evidence presented and the reasonable inferences drawn from the evidence in the light most favorable to the verdict. *Glasser v. United States*, 62 S. Ct. 457, 469 (1942). We must overturn a jury verdict if no rational trier of fact could have found the defendant's guilt of the offense charged beyond a

13

reasonable doubt. *Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979).

In *United States v. Powell*, 105 S. Ct. 471 (1984), the Supreme Court confronted a situation similar to the present case. At trial, a jury acquitted the defendant of conspiracy to possess cocaine and possession of cocaine, but found her guilty of using a telephone to facilitate those offenses. *Id.* at 474. Because of the government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity, the Supreme Court held that inconsistent verdicts are generally not reviewable. *Id.* at 479. Accordingly, Johnson's inconsistent verdict argument is without merit.

Furthermore, we find unavailing Johnson's arguments pertaining to the credibility of the witnesses who testified against her. Although those witnesses were also the basis for the government's drug conspiracy charge, to which the jury could not return a verdict, "a not guilty verdict on one count does not establish any facts favorable to the defense for the purpose of determining the sufficiency of the evidence on the counts of conviction . . . ." *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994). Considering that the jury in the instant case did not even return a not guilty verdict, we believe Johnson's position to be even less meritorious.

As for Johnson's independent attack on the credibility of the

14

government's witnesses, it is inadequate to support reversal. "[A] conviction may be sustained solely on the basis of the testimony of a coconspirator--even a coconspirator who testifies on the basis of a plea bargain or promise of leniency--so long as that testimony is not incredible as a matter of law--that is, so long as it does not defy the laws of nature or relate to matters that the witness could not have observed." ***Garcia Abrego***, 141 F.3d at 155-56. Johnson has not demonstrated that any of the testimony defied the laws of nature or related to matters that the witnesses could not have observed.

2. The District Court Did Not Clearly Err In Attributing 226 Grams Of Cocaine Base To Johnson

Johnson's second point of error charges that the district court should only have held her responsible for 31 grams of cocaine base, rather than the 226 grams for which she was sentenced. Her argument is essentially a rehash of some of the arguments that she offered with respect to her sufficiency of the evidence claim. Specifically, she maintains that the jury's failure to convict her on the conspiracy count establishes the jury's disbelief of some of the government witnesses whose testimony established the quantity of drugs assessed against her. As with her sufficiency of the evidence claim, Johnson's second point of error is unavailing for substantially the same reasons. In addition, she has not demonstrated that the district court committed any clear error.

15

## III. CONCLUSION

For the foregoing reasons, the appellants' judgments of conviction and Bradford's and Johnson's sentences are affirmed. With respect to Bullard's appeal of his sentence, that is dismissed for lack of jurisdiction.