# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00773-SCT

*MARCUS L. ROBINSON a/k/a MARCUS LEVON ROBINSON a/k/a MARCUS ROBINSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2023 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| TRIAL COURT ATTORNEYS: | MARVELL MAURICE GORDON |
| | STEVEN PATRICK JUBERA |
| | JALEESA RENE' SEALS |
| | BRADLEY STUART PEEPLES |
| | JOHN KEITH PERRY, JR. |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  GEORGE T. HOLMES |
| |      ZAKIA BUTLER CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | JAMES STEPHEN HALE, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/30/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN, P.J., AND CHAMBERLIN, J.**

**COLEMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Marcus Robinson brutally assaulted his elderly roommate, leaving him with severe and life-threatening injuries.  A Yalobusha County jury convicted Robinson of aggravated assault, and the circuit judge sentenced him to life imprisonment as a violent habitual offender.  After his post-trial motion was denied, Robinson appealed.  We affirm his conviction.

## BACKGROUND

¶2.     In 2020, Robinson shared an apartment with the elderly and disabled Steven Shaw. Robinson was struggling financially, so Shaw covered the bills while Robinson assisted him. Tamika McCollins, Robinson and Shaw's next-door neighbor, frequently heard fighting from their apartment. On December 1, 2020, McCollins heard fighting that was worse than she had ever heard before. She testified that she heard Robinson "cussing [Shaw] out," she heard something hitting the walls and the floor, and she deduced that Robinson was beating Shaw. McCollins ultimately left her apartment that night due to the noise and reported to the housing authority that Shaw may have been badly hurt or dead.

¶3.     Justin Smith, an employee of the housing authority, conducted a wellness check and found Shaw severely injured and unrecognizable. Shaw refused an ambulance, so the housing authority notified the police. Officer Steven Story responded to the call and testified that he found Shaw lying in bed; Shaw's head, face, and eyes were swollen, and there was dried blood around his mouth and nose. Officer Story stated that Shaw was unable to walk and "could barely speak." Water Valley Police Chief Jason Mangrum testified that Shaw was in a "very grave" condition. He stated that Shaw "was badly bruised, cut up, beat up, and in very bad medical shape." Chief Mangrum also testified that he perceived fresh blood and bruises on Shaw's person.

¶4.     Shaw initially told law enforcement that he had fallen in the shower; later, he stated that he had fallen off of the apartment steps. Chief Mangrum, however, ultimately opined

2

that he did not believe Shaw's version of events; rather, in his experience, he believed that Shaw had been assaulted.

¶5.    Shaw was taken to a hospital and then a trauma center.  Dr. Jason Waller testified that Shaw had multiple acute facial fractures on December 1, 2020, when he was treated at Baptist Memorial Hospital.  Waller further explained that acute injuries were "fresh or new" as opposed to chronic, or old, injuries.  Waller asserted that Shaw's injuries were unlikely to have resulted from a fall.  Waller stated that the injuries on Shaw's back also appeared to be fresh, a few days old.  On cross-examination, Waller further specified that some of Shaw's injuries examined on December 1 appeared to have been inflicted "within the day or two." Waller testified that on December 1, 2020, Shaw was suffering from life-threatening injuries and could have died if he had not received medical attention.

¶6.    Based on witness statements, Robinson was arrested when he returned to the apartment on December 1 while law enforcement was still investigating the scene. Officer Story testified that his hands were swollen and there was blood on his shoe and clothes. Robinson's clothing was submitted for DNA testing, and the results revealed Shaw's DNA on them.

¶7.    Steve Thompson, Shaw's friend and former landlord, stated that Shaw told him he was afraid to speak out about who assaulted him but eventually confessed that it was Robinson. Thompson emphasized that from then on, Shaw maintained that Robinson assaulted him. Chief Mangrum testified that Shaw later informed him that Robinson assaulted him and

3

caused his injuries on December 1, 2020. Chief Mangrum further testified that Shaw later explained why he initially provided law enforcement with false statements:

> He stated that Mr. Robinson had threatened him and his family and to kill him and his family if he told the police that [Robinson] had been the one that had assaulted him. He said he was scared for his life, so he made up the story about falling from the steps and falling in the shower to protect himself in the future.

¶8. Shaw testified that Robinson caused his injuries on November 30 and December 1. He stated that he initially lied to the police because "[Robinson] said if he got locked up, he would bail out and come break the apartment windows out and come in and beat me to death." Shaw further stated, "I was afraid for my life."

¶9. The jury found Robinson guilty of aggravated assault, and the trial court sentenced him to life imprisonment as a habitual offender. The trial court denied Robinson's post-trial motion, and he appealed. Robinson's appellate counsel argues that there was insufficient evidence to support his conviction of aggravated assault on the date listed in the indictment. Robinson filed a pro se brief, and he argues that his pretrial, trial, and appellate counsel were ineffective, that the State committed two *Brady*[1] violations, and that the trial court lacked jurisdiction.[2] Because there was sufficient evidence to support Robinson's conviction and because his remaining arguments lack merit, we affirm.

## DISCUSSION

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] The State filed a motion for time to file a supplemental brief and a motion to file a supplemental brief. Both are hereby denied.

## 1.    *Sufficiency of the Evidence*

¶10.    On appeal, Robinson first argues that the evidence was insufficient to sustain his conviction for aggravated assault. Specifically, Robinson purports that there was insufficient evidence to prove that Shaw was seriously injured within a reasonable time of the date alleged in the indictment, being "on or about the 1st of December in the year of our Lord 2020." The State, on the other hand, asserts that it presented sufficient evidence that Shaw's injuries were one or two days old when he was taken to the hospital on December 1, 2020. Alternatively, the State purports that Robinson's argument on the issue also fails because the precise date of the assault was not an essential element that it was required to prove beyond a reasonable doubt. We agree with the State, as discussed below.

¶11.    The Court reviews a sufficiency-of-the-evidence claim *de novo*. ***Sanford v. State***, 247 So. 3d 1242, 1244 (¶ 10) (Miss. 2018) (citing ***Brooks v. State***, 203 So. 3d 1134, 1137 (¶ 11) (Miss. 2016)). "The relevant question is whether 'any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.'" ***Id.*** (internal quotation marks omitted) (quoting ***Hearn v. State***, 3 So. 3d 722, 740 (¶ 54) (Miss. 2008)). Further, in reviewing the sufficiency of the evidence, the Court "view[s] the evidence in the light most favorable to the State." ***Sheely v. State***, 391 So. 3d 186, 191 (¶ 16) (Miss. 2024) (citing ***Swanagan v. State***, 229 So. 3d 698, 703 (Miss. 2017)).

¶12.    Robinson was charged with aggravated assault under Mississippi Code Section 97-3-7(2)(a), which states, in pertinent part, that "[a] person is guilty of aggravated assault if he

or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . . " Miss. Code Ann. § 97-3-7(2)(a)(i) (Rev. 2020).

¶13. Robinson does not deny that he assaulted Shaw; rather, he argues only that the State failed to prove that "the aggravated injuries occurred within a reasonable period of the date set forth in Robinson's indictment." Robinson cites *Daniels v. State*, where the Court stated that the exact date of an offense is not an essential element, so long as the State proves that the offense occurred "within reasonable limits" of the date alleged in the indictment. *Daniels v. State*, 742 So. 2d 1140, 1143 (¶ 10) (Miss. 1999) (internal quotation mark omitted) (quoting *United States v. Cochran*, 697 F.2d 600, 604 (5th Cir. 1983)), *overruled on other grounds by Wilson v. State*, 194 So. 3d 855 (Miss. 2016). In that case, the Court held that there was sufficient evidence to prove that the charged offense occurred "within reasonable limits" of the date alleged in the indictment because the victim testified that the offense occurred one or two days before the date outlined in the indictment. *Id.* (¶ 9-10) (internal quotation mark omitted) (quoting *Cochran*, 697 F.2d at 604).

¶14. Robinson asserts that his case is clearly distinguishable from *Daniels* because there is no evidence of when Shaw was injured. Robinson points to Shaw's testimony that Robinson assaulted him continuously for months, that he did not remember when Robinson inflicted each specific injury because he was beaten on a daily basis, and that his nose and jaw were broken prior to December 1, 2020. Thus, Robinson asserts that, based on Shaw's

testimony, no reasonable trier of fact could determine that Shaw's injuries occurred on or about December 1, 2020. We disagree.

¶15. As the State notes, McCollins testified that she heard loud fighting in Shaw's apartment on November 29, 2020, and December 1, 2020, and that she notified the housing authority that, based on what she heard, Shaw may be dead or in a serious condition. When he was brought to the hospital on December 1, 2020, Shaw was suffering from life-threatening injuries that were one to two days old. Thus, the case *sub judice* is not distinguishable from *Daniels*, as Robinson purports; like in *Daniels*, testimony supported that the offense occurred one to two days prior to the date alleged in the indictment, December 1, 2020. A rational trier of fact could have found the elements of aggravated assault beyond a reasonable doubt.

¶16. Nevertheless, as the State notes, the indictment alleged that the assault occurred "on or about" December 1, 2020, and the State was not required to prove an exact date. *See Ross v. State*, 288 So. 3d 317, 323 (¶ 21) (Miss. 2020). Rather, the Court has held that "a period of two months is within reasonable limits of, or reasonably near," the dates alleged in an indictment, especially when the indictment uses "on or about" language. *McBride v. State*, 61 So. 3d 138, 150 (¶ 51-52) (Miss. 2011) (citing *United States v. Mata*, 491 F.3d 237, 243 (5th Cir. 2007)).

¶17. Again, Shaw was suffering from serious, acute injuries on December 1, 2020. McCollins testified that the fighting she overheard on November 29 and December 1 were

the worst she had heard from Shaw's apartment, so much so that she feared Shaw was severely injured or dead. Finally, Thompson testified that he saw Shaw two months prior in October 2020, and Shaw was not suffering from the same injuries as on December 1, 2020. When he saw him again on December 1, 2020, Thompson testified that Shaw looked dramatically different. Viewing the evidence in the light most favorable to the State, we find sufficient evidence was presented that Robinson committed aggravated assault on or around December 1, 2020.

### 2. Ineffective Assistance of Counsel

¶18. Next, Robinson asserts that his pretrial, trial, and appellate counsel were ineffective. First, Robinson argues that he was denied his right to effective assistance of counsel because his counsel failed to investigate his mental illness, which he urges "would have prompted Counsel to either move for dismissal of the charges or to pursue an [insanity defense]." We hold that Robinson received effective assistance of counsel during all stages of the proceedings against him.

¶19. "The standard for considering ineffective assistance is the same for appellate and trial counsel." *Ray v. State*, 238 So. 3d 1118, 1124 (¶ 30) (Miss. 2018) (citing *Foster v. State*, 687 So. 2d 1124, 1138 (Miss. 1996)). The Court reviews a defendant's ineffective assistance of counsel claim as follows:

> The standard of review for a claim of ineffective assistance involves a two-pronged inquiry: the defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. To establish deficient performance, a defendant must show that his

8

attorney's representation fell below an objective standard of reasonableness. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.

*Ross v. State*, 954 So. 2d 968, 1003-04 (¶ 78) (Miss. 2007) (citations omitted). Further, whether counsel acted reasonably is determined by "considering all the circumstances," and a claim for ineffective counsel fails if the underlying claim lacks merit. *Id.* (citing *Davis v. State*, 897 So. 2d 960, 967 (Miss. 2004)).

¶20. Robinson admits his trial counsel was made aware of the order committing him to outpatient treatment, so his counsel knew of his mental illness and that it was serious enough to warrant court-ordered outpatient treatment. Robinson fails to present evidence that would reasonably have prompted his trial counsel to move to dismiss the case or pursue an insanity defense. Therefore, absent evidence to the contrary, the Court finds that Robinson's pretrial and trial counsel were effective.

¶21. Robinson also claims that he was denied effective appellate counsel because his counsel did not address his claims of ineffective assistance of trial counsel, his claim that the trial court lacked jurisdiction, his claims of prosecutorial and juror misconduct, and his claim that both the State and his defense counsel suppressed evidence. Other than providing the Court with the relevant law, Robinson presents no additional arguments in support of his ineffective appellate counsel claim. The record contains no evidence that Robinson's appellate counsel was ineffective for failing to address his litany of issues. Additionally, as discussed below the Court finds that Robinson's underlying claims lack merit. Accordingly,

Robinson was not deprived of effective pretrial, trial, or appellate counsel.

### 3. Brady Violations

¶22. Robinson also submits that the State committed two **Brady** violations by failing to present the order for outpatient treatment and by introducing a photograph of his hands. The State did not commit a **Brady** violation as to either.

¶23. "This Court reviews whether a **Brady** violation occurred de novo." **Douglas v. State**, 378 So. 3d 361, 374 (¶ 42) (Miss. 2024) (internal quotation marks omitted) (quoting **Chisholm v. State**, 365 So. 3d 229, 242 (Miss. 2023)). To prove a **Brady** violation, the defendant must establish:

> (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

**Douglas**, 378 So. 3d at 374 (¶ 43) (quoting **Blakely v. State**, 311 So. 3d 593, 602 (Miss. Ct. App. 2020)).

¶24. Moreover, "[e]vidence is not deemed suppressed if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." **Id.** (¶ 44) (internal quotation marks omitted) (quoting **Blakely**, 311 So. 3d at 602). The State is not required to provide the evidence when the evidence is "fully available to the defendant or . . . could be obtained through reasonable diligence." **Id.** (internal quotation mark omitted) (quoting **Blakely**, 311 So. 3d at 602).

¶25.    First, Robinson argues that the State committed a ***Brady*** violation by failing to present the allegedly exculpatory evidence of the order committing him to outpatient treatment. Robinson admits that he was ordered to get outpatient treatment, yet he defied the court, and he also admits that his counsel was aware of the order. Because Robinson possessed the evidence himself, there was no ***Brady*** violation.

¶26.    Second, Robinson argues that the State committed a ***Brady*** violation by allegedly introducing a photograph that was not presented to the defense during discovery. Robinson's argument lacks evidentiary support. While the State did seek to introduce a photograph taken of Robinson's hands after he was arrested, the trial court sustained the defense's objection, and the photograph was not introduced into evidence. The only subsequent mention of the photograph was elicited by the defense on cross-examination when Robinson's counsel asked Officer Story whether he took any photographs on the scene on December 1, 2020, and Officer Story replied that he took a picture of Robinson's hands. Both of Robinson's cited ***Brady*** violations are without merit.

       *4.    Jurisdiction*

¶27.    Robinson next argues that the Yalobusha County Circuit Court lacked jurisdiction. Jurisdictional questions are reviewed *de novo*. ***K&C Logistics, LLC v. Old Dominion Freight Line, Inc.***, 374 So. 3d 515, 519 (¶ 10) (Miss. 2023) (quoting ***Greenville Pub. Sch. Dist.***, 352 So. 3d 190, 192 (Miss. 2022)). Robinson bases his jurisdictional argument on the order for outpatient treatment entered against him by the Yalobusha County Youth Court.

11

The chancellor found that Robinson was mentally ill, and Robinson was ordered to obtain outpatient treatment. If he failed to do so, the order stated that "he shall be taken into custody by the Yalobusha County Sheriff's Department for further proceedings . . . ."

¶28. Robinson admits that he did not abide by the chancellor's order. He states that law enforcement failed to apprehend him, which he purports deprived him of his life and liberty. Robinson further maintains that he was a "mentally ill ward of the State," and law enforcement's failure to apprehend him was unconstitutional, discriminatory, and resulted in his being "made to appear intentionally guilty of the charged offense."

¶29. Robinson, however, fails to present an explanation as to how his failure to abide by the order resulted in the circuit court's forfeiture of jurisdiction. The fact that Robinson was not subsequently arrested for admittedly flouting the Yalobusha County Youth Court's order has no bearing on the Yalobusha County Circuit Court's jurisdiction over his assault of Shaw. Without question, Article 6, Section 156, of the Mississippi Constitution grants jurisdiction to the Yalobusha County Circuit Court, and Robinson's contentions fall far short of showing otherwise. Miss. Const. art. 6, § 156. We hold that Robinson's jurisdictional argument is without merit.

*5. Partial Jury*

¶30. Robinson claims that Juror 9, Craig Hawkins, is his cousin, and that Hawkins's son, allegedly now deceased, attempted to attack him. Thus, Robinson asserts that Hawkins "always had a grudge against [him] . . . [and] took this opportunity to get even with [him]."

12

Robinson further claims that Hawkins should have been disqualified as a juror for withholding the information that he was related to Robinson, Hawkins committed fraud upon the court, and that Hawkins "tainted the whole panel" and thus deprived him of a fair and impartial jury. Robinson first raised the issue in his motion for a JNOV or a new trial, which the trial court denied, finding that Robinson received a fair trial.

¶31. The Court reviews a trial court's denial of a motion for a JNOV *de novo*. *InTown Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 718 (¶ 22) (Miss. 2011) (quoting *United Servs. Auto. Ass'n (USAA) v. Lisanby*, 47 So. 3d 1172, 1176 (Miss. 2010)). A motion for a new trial is reviewed for abuse of discretion. *Burden v. State*, 347 So. 3d 174, 177 (¶ 14) (Miss. 2022) (quoting *Daniels v. State*, 107 So. 3d 961, 963 (¶ 12) (Miss. 2013)).

¶32. Robinson cites two cases to support his assertion that he was deprived of a fair and impartial trial. Both cases are easily distinguished from the case *sub judice*. First, Robinson relies on *Myers v. State*, 565 So. 2d 554, 558 (Miss. 1990), where a juror failed to disclose that her husband had been convicted of perjury and "bootlegging," and the Court held that the trial court correctly removed the juror. *Myers*, 565 So. 2d at 556, 559 (internal quotation marks omitted).

¶33. Robinson also cites *Odom v. State*, 355 So. 2d 1381 (Miss. 1978). In that case, a juror failed to inform the court that his brother was one of the police officers who investigated the defendant's crime, which the Court found prejudiced the defendant. *Odom*, 355 So. 3d at 1382. The Court stated that "where, as here, a prospective juror in a criminal case fails to

13

respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, *although having knowledge of the information sought to be elicited*, the trial court should" determine whether the defendant was prejudiced by "the juror's failure to respond." *Id.* at 1383 (emphasis added).

¶34.    In the case *sub judice*, however, Robinson accepted Juror 9, Craig Hawkins, and failed to raise the issue until he moved for a directed verdict. In response to Robinson's motion, the State submitted that Hawkins was unaware of any relation to Robinson and would have informed the court if he knew of such relation. Indeed, Hawkins informed the court that he was related to several people in the venire. While Hawkins knew of Robinson and his mother in the community, he signed an affidavit and testified that he did not know them personally, that he had no knowledge of any familial relationship between them, and that he viewed the evidence fairly and impartially.

¶35.    Unlike in the cases Robinson cites, there is no evidence that Hawkins had knowledge of any relationship between them. Hawkins attests that he was unaware of any such relationship to Robinson, that he would have informed the court of any relationship had he been aware of it, and that he viewed the evidence fairly and impartially.

¶36.    If Robinson was aware of the relationship, then it was incumbent upon him to raise the issue during voir dire. Indeed, as the Court stated in *Myers*, in general, "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." *Myers*, 565 So. 2d at 557 (citing *Pickett v. State*, 443 So. 2d 796, 799 (Miss.

14

1983); *Watkins v. State*, 262 So. 2d 422, 423 (Miss. 1972); *Holloway v. State*, 242 So. 2d 454, 455-56 (Miss. 1970)).  Therefore, the Court holds that Robinson was not denied a fair and impartial jury and that the trial court did not abuse its discretion by denying his post-trial motion.

## CONCLUSION

¶37.    Discerning no error, we affirm Robinson's conviction.

¶38.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**