# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01347-SCT

*JERRY McBRIDE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2008 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY:  W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LISA LYNN BLOUNT |
| DISTRICT ATTORNEY: | LAURENCE MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/12/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The Sixth Amendment to the United States Constitution and Mississippi law both afford an accused the right to a speedy trial.  And, once an accused is brought to trial, the State bears the burden of proving each element of the charged offense beyond a reasonable doubt.  Jerry McBride argues that his right to a speedy trial was violated, and that the evidence was insufficient to sustain his conviction of sexual battery.  We disagree.  His conviction and sentence, therefore, are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2.     The following history is taken from the facts and trial-court proceedings set out in the

opinion of the Court of Appeals.

> . . . In May 2006, McBride was indicted for sexual battery of his daughter,
> who was under the age of fourteen at the time of the incident, pursuant to
> Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006).   The
> indictment stated the battery occurred "on or about or between January 2002,
> and December 2005" in Coahoma County.  McBride was subsequently
> arrested, arraigned, and assigned a court-appointed attorney.
>
> . . . McBride did not go to trial until several terms of court had passed. The
> court docket indicates that in September 2007, an order setting trial was filed.
> Representations at the pre-trial hearing indicated that this trial setting was for
> November 2007.  Then, the record shows that in December 2007, an order
> reset trial for January 2008, but in January 2008 an agreed order reset trial to
> February 2008.  In December 2007, McBride filed two pro se "Motion[s] for
> Directed Verdict of Acquittal," within days of one another, complaining that
> he had been incarcerated for sixteen months in violation of his constitutional
> rights.   Therefore, he asked that the charges against him be dismissed.
> Additionally, he noted he never received a copy of the indictment, never had
> a preliminary hearing, and never asked for a continuance of his trial, among
> other complaints.   Also, in January 2008, McBride, dissatisfied with his
> court-appointed attorney's performance, filed a motion requesting termination
> of the services of his attorney.  Pretrial hearings were held on McBride's
> motions, which were denied.  The trial judge, considering McBride's pro se
> motions together, stated that McBride's "most significant complaint" was
> concerning the delay in his trial.  However, the trial judge made a detailed
> analysis of the appropriate factors outlined in ***Barker v. Wingo***, 407 U.S. 514,
> 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) regarding the speedy-trial complaint
> and found no prejudice.
>
> . . . McBride's trial commenced on February 19, 2008.  The State produced
> three witnesses: the victim, a middle-school counselor, and a Department of
> Human Services (DHS) specialist. The victim, who was eighteen years old at
> the time of trial, testified regarding two sexual incidents with McBride. At the
> time of the sexual incident, she was approximately eleven years old and
> McBride was living with his mother.  He drove her and his seven-year-old son
> to "a friend's house," which was in "the Brick Yard" in Clarksdale,
> Mississippi.  When they arrived at the house, nobody was home.  McBride
> took his daughter to the back of the house.  He began hugging and touching

2

her.  Then, he pulled down her pants, unzipped his pants, and put his penis in her vagina.  She testified she fought and screamed, but she did not tell anyone about the incident because she was scared.

. . . The victim also testified about a second sexual incident with McBride that occurred when she was approximately fifteen years old.  She and McBride went on the back roads outside of Clarksdale in order to let her drive.  McBride's daughter testified she did not want to go with him.  When they were approximately thirty minutes from Clarksdale, while she was driving, McBride began fondling her breasts and touching her between her legs, on top of her clothes.  The victim, who lives with her mother, admitted that McBride had been mostly absent from her life and did not provide her money or material possessions.  Also, there was "bad blood" between her mother and her father, who did not live together.  The victim stated these were the only incidents of sexual abuse by her father.

. . . The next witness for the State was a counselor from Oakhurst Middle School in Clarksdale. She testified that the victim approached her at school.  Based on what the victim told her, the counselor alerted DHS, which came to the school and interviewed the victim. The last witness for the State, a family-protection specialist with DHS, explained she was employed by DHS to investigate allegations of child abuse.  She testified that she investigated the allegation and spoke with the victim, as well as the victim's family members.  The victim had a "forensic interview" with DHS in December 2005.

. . . No witnesses testified for the defense.  The jury returned a verdict of guilty, and McBride was sentenced to twenty-five years in the custody of the MDOC.  McBride filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied.

***McBride v. State***, __ So. 3d __, 2010 WL 1757933, *1-2 (Miss. Ct. App. May 4, 2010).

¶3.    The trial court granted McBride's motion for out-of-time appeal, and he appealed his conviction and sentence.  We assigned the case to the Court of Appeals, which affirmed the trial court.  We granted certiorari and now consider whether McBride was denied his constitutional and statutory rights to a speedy trial, and whether the State carried its burden of proving each element of the offense beyond a reasonable doubt.

**DISCUSSION**

3

**I. Neither McBride's constitutional nor statutory right to a speedy trial was violated.**

**A. Constitutional right to a speedy trial**

¶4. The Sixth Amendment to the United States Constitution provides an accused the "the right to a speedy and public trial . . . ." U.S. Const. amend. VI. That right applies to the states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 87 S. Ct. 988, 993-94, 18 L. Ed. 2d 1 (1967). Article 3, Section 26 of the Mississippi Constitution of 1890 likewise guarantees a criminal defendant the right to "a speedy and public trial . . . ." Miss. Const. art. 3, § 26.

¶5. The Supreme Court of the United States has set forth four factors to consider whenever a defendant alleges that his constitutional right to a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101(1972). None of these four factors is necessary or sufficient on its own to find a deprivation of the right to a speedy trial. *Id.* at 533. All are related and must be considered alongside other relevant circumstances. *Id.* The analysis thus entails "a difficult and sensitive balancing process." *Id.*

¶6. Where, as here, a trial court articulates findings of fact and sets forth reasons for its decisions concerning the *Barker* factors, this Court will uphold those findings so long as they are based upon substantial, credible evidence. *See State v. Ferguson*, 576 So. 2d 1252, 1255 (Miss. 1991).

**1. Length of the delay**

4

¶7. A full ***Barker*** analysis is warranted only if the delay was presumptively prejudicial. ***Stark v. State***, 911 So. 2d 447, 450 (Miss. 2005) (citing ***Barker***, 407 U.S. at 530). In Mississippi, a delay of more than eight months is presumptively prejudicial. ***Stark***, 911 So. 2d at 450 (citing ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989)).

¶8. A formal indictment or information or an arrest – whichever first occurs – triggers the constitutional right to a speedy trial. ***United States v. Marion***, 404 U.S. 307, 320, 92 S. Ct. 455, 463, 30 L. Ed. 2d 468 (1971); ***Smith***, 550 So. 2d at 408 (citing ***Perry v. State***, 419 So. 2d 194, 198 (Miss. 1982)). Accordingly, McBride's constitutional right to a speedy trial attached when he was indicted on May 30, 2006. His trial, however, did not occur until February 19, 2008 – a delay of almost twenty-one months. The delay here is thus presumptively prejudicial, and a full analysis of the remaining ***Barker*** factors is required.

## 2. Reasons for the delay

¶9. Once the delay is deemed presumptively prejudicial, "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." ***Ferguson***, 576 So. 2d at 1254. Different weights are assigned to various reasons for the delay. ***Barker***, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government[,]" whereas "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . ." ***Id.*** Neutral reasons, nevertheless, "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." ***Id.*** Valid reasons, such as a missing witness, justify appropriate delay. ***Id.***

¶10. At a pretrial hearing on McBride's Motion for Directed Verdict of Acquittal, the State offered essentially four reasons for the delay in bringing McBride to trial: (1) the timing of McBride's arrest; (2) negligence or administrative oversight; (3) an overcrowded docket; and (4) the unavailability of a key witness for the State. The trial court denied McBride's motion and issued an order explaining, court term by court term, its analysis of the reasons for the delay. It ultimately found that this factor weighed against the State, but not heavily.

*May 30, 2006, to January 2007*

¶11. McBride was indicted on May 30, 2006, about a month before the trial court's July-to-August 2006 term. Yet McBride was not arrested and taken into custody until August 4, 2006, approximately midway through that particular term. As a result, his case was not placed on the trial calendar for the July-to-August 2006 term. The next available term of court was the January-to-February 2007 term. Though a one-month mini-term was held in the interim, the mini-term was devoted to cases that initially had been scheduled for the July-to-August 2006 term. The trial court did not weigh the seven-month period from May 30, 2006, to January 2007 against the State.

¶12. We agree that this initial, seven-month delay should not be weighed against the State. Substantial evidence supports that the sheer timing of McBride's indictment and arrest practically foreclosed the setting of any trial date during these first seven months.

*January 2007 to November 2007*

¶13. McBride's case was not set for trial during either the January-to-February 2007 term or the July-to-August 2007 term. The trial court attributed this to negligence or oversight on

6

the part of the State.  The trial court, however, found no evidence to suggest that the State

had acted deliberately or intentionally.

*November 2007 to January 22, 2008*

¶14.    The State maintained that McBride's case was scheduled for the November 2007

mini-term, but, obviously, was not tried during that mini-term.  The State acknowledged that

it did not submit a written motion for a continuance, and offered several reasons as to why

the case had not been tried:

> . . . It's possible that [McBride's case] was bumped.  That would have been
> around the time that the State discovered that the forensic interviewer who
> performed the forensic interview in this case, Ejeera Selmer Joiner, was no
> longer available.  The State didn't file a written motion for continuance and
> there was no order continuing the case on that basis.  But I would say it's at
> least possible that it was continued for good cause [based] on the unavailability
> of that particular witness.  It also could have been an overcrowded docket.

Later on, the State reemphasized the unavailability of its witness, Joiner, as the primary

reason for the delay:

> . . . That brings us to the November 2007 term in which the case was set, mini-
> term, when the case was set and was, for whatever reason, not tried.  There is
> no order for a continuance.  The State would say that, at worst, the delay might
> be attributable to the unavailability of the forensic interviewer witness Ejeera
> Selmer Joiner, which the State's position would be that's delay for good cause
> and should not be counted as prejudicial towards the State. . . .

¶15.    The trial court found that McBride's case had been set for trial during the November

2007 mini-term, but concluded that it had not been tried due to an overcrowded docket and

the unavailability of the State's witness:

> Unfortunately, due to the overcrowded nature of the court's docket and the
> multitude of cases set during this mini-term, [McBride's] trial was not heard.
> Also, it appears that about this same time the State discovered that the forensic
> interviewer that conducted the interview with the alleged minor victim was no

7

longer employed by Family Crisis Services. As such, the State had to make alternate plans regarding a child abuse and/or forensic interview expert in this case.

¶16.   The record is sparce concerning this November 2007 mini-term. The docket sheet indicates that McBride's case was in fact set for trial during the November 2007 mini-term. Next to "September 21, 2007," is stamped "ORDER SETTING STATE DOCKET TRIAL CALENDAR WITH CALENDAR ATTACHED." But the record contains no order for this trial setting; nor does it contain a motion for a continuance or any order granting a continuance. Nevertheless, the State conceded from the outset that no such motion or order existed.

¶17.   Based on the docket sheet and the representations of the State, there is substantial evidence to support that McBride's case was set for trial during the November 2007 mini-term, but that it was not tried then due either to an overcrowded docket or the unavailability of one of the State's witnesses.

*January 22, 2008, to February 19, 2008*

¶18.    McBride's case finally was set for trial on January 22, 2008. But since one of the State's witnesses was unavailable for trial on that date, both parties agreed to reset the case for trial on February 19, 2008.

¶19.   In sum, there is substantial, credible evidence to support the trial court's conclusion that the reasons-for-the-delay factor should weigh against the State, but not heavily. A significant portion of the delay – ten months at least – was due to negligence or oversight by the State. This is both unfortunate and regrettable. But, as the trial court noted, there is no

8

evidence to suggest that the State acted deliberately. Consequently, this factor should not be weighed heavily against the State. *Barker*, 407 U.S. at 531.

### 3.      Assertion of the right

¶20.    An accused has no duty to bring himself to trial. *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990) (citing *Barker*, 407 U.S. at 527). But he does have some responsibility to assert his right to a speedy trial. *Barker*, 407 U.S. at 528-29. The Supreme Court in *Barker* emphasized "that failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532.

¶21.    Importantly, a demand for dismissal due to a speedy-trial violation is *not* the equivalent of a demand for a speedy trial. *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994). (citing *Adams v. State*, 583 So. 2d 165, 169-70 (Miss. 1991)). A demand for dismissal seeks discharge, not a trial. *Perry*, 637 So. 2d at 875.

¶22.    On December 28, 2007, more than a year and a half after being indicted, McBride filed a pro se motion for directed verdict of acquittal, alleging, in part, that his constitutional and statutory rights to a speedy trial had been violated. He filed a similar pro se motion the following month as well. Though McBride sought dismissal of his case, he never demanded a trial. His pro se motion for directed verdict of acquittal was not filed until after almost all of the delay had already occurred, and just days after the December 2007 order setting his case for trial. It is clear that McBride never sought to have his case heard; he simply wanted it dismissed.

¶23.    We find that there is substantial evidence to support the trial court's finding that this factor does not weigh in McBride's favor.

9

### 4.        Prejudice

¶24.    Prejudice is assessed in light of the interests that the speedy-trial right is designed to protect.  *Barker*, 407 U.S. at 532.  Those interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Id.* (citations omitted).  The last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*

¶25.    The trial court specifically questioned McBride as to whether he had suffered any prejudice because of the delay.  McBride's only response was that the events were "fresher" in his mind a year ago.  When asked if he had anything else, McBride replied, "No, not really."

¶26.    We agree with the trial court that McBride failed to show actual, significant prejudice from the delay.  Loss of memory certainly may cause prejudice where witnesses are "unable to recall accurately events of the distant past."  *Id.*  But a vague assertion by the defendant that certain events are not as fresh in his mind is not the same.  McBride, furthermore, did not testify in his own defense and did not call any witnesses.

¶27.    The dissent in the Court of Appeals contended that McBride was confused about the trial court's questions concerning prejudice.  *McBride v. State*, __ So. 3d. __ 2010 WL 1757933, *12 (Miss. Ct. App. May 4, 2010).  It concluded that the trial court had required McBride to answer those questions even though his attorney was present, and that McBride was not informed that oppressive pretrial incarceration and anxiety were legitimate forms of prejudice.  *Id.*  McBride may very well have been confused by the questions, but it does not

10

appear that the trial court required McBride himself to answer the questions. McBride, rather, voluntarily answered the questions while receiving hybrid representation[1] from his court-appointed attorney, Allan Shackelford.

¶28. Prior to the February 15, 2008, pretrial hearing, McBride had expressed dissatisfaction with his court-appointed attorney, Shackelford. In January 2008, McBride filed a pro se motion to have Shackelford removed as his counsel. He argued that Shackelford had failed to provide any meaningful assistance. McBride said that he had written the Mississippi Bar, had filed "complaints" against Shackelford in the circuit court, and that he had filed suit against Shackelford in federal district court. The trial court addressed McBride's motion at a pretrial hearing on February 14, 2008. It refused to remove Shackelford as McBride's attorney and encouraged McBride to take advantage of Shackelford's representation.

¶29. The following day, on February 15, 2008, the trial court conducted another pretrial hearing in which it addressed McBride's speedy-trial contention. When the prejudice factor under *Barker* came up for discussion, the following colloquy occurred:

| [The Court]: | All right. Mr. McBride, these are matters that you filed pro se, that is yourself. I don't know if you want me to address you or Mr. Shackelford. |
|---|---|
| [McBride]: | Well, he could address it, would be fine, sir. |
| [The Court]: | I am interested - - if you claim to have been prejudiced by this delay, I would be interested in knowing what prejudice you claim? |

---

[1] "Hybrid representation consists of 'the participation by an attorney in the conduct of the trial when the defendant is proceeding pro se.'" *Hearn v. State*, 3 So. 3d 722, 734 (Miss. 2008) (quoting *Metcalf v. State*, 629 So. 2d 558, 562-63 (Miss. 1993)).

[McBride]:   You mean in - - (stops).

[The Court]:   Has the delay inhibited or injured or impeded your ability to - - let me make certain that you understand what I'm asking - - impeded your ability to set forth your defense? I'm not asking what your defense is because at this point in time that's really none of my business. But has the delay somehow impeded your ability to set forth your defense?

[McBride]:   May I ask Mr. Shackelford?

[The Court]:   Certainly.

[McBride]:   Are you aware of that motion, sir?

[Shackelford]:   The question he's asking you is how did it keep you from getting a not guilty verdict? Let's go that way.

[The Court]:   I assume - - you've pled not guilty to these allegations so I assume you claim you're not guilty of them.

[McBride]:   Yes, sir.

[The Court]:   And I will assume - - again, I'm not asking - - I don't want to go into what your defense is, but I assume because you claim to be not guilty that you anticipate asserting some sort of defense. You intend to defend yourself against these allegations. By proof, either by some sort of witnesses, or your testimony, or, you know, some kind of defense. And what I'm asking is do you claim that the delay that has been associated in this case somehow prohibits you or makes it more difficult for you defend yourself? Do you understand the question?

[McBride]:   Yes, sir. I'm not saying that it - - I don't really know because really I don't really get what you're really asking me. You know, about whether it would jeopardize me - -

[The Court]:   - - Well, I'll give you an example. I had another case a couple of weeks ago where there had been some delay and the defendant claimed, "Well, because of this delay, I've had a witness that moved out of state. I can't find

12

my witness now. So that's hurt me in my ability to defend myself." That would be a way that that [sic] defendant claimed. Or say, you know, "I can't remember all the details of what happened anymore. It has been too long." That might inhibit the defense. I'm just asking you do you have anything, that you can point to, to say, "Look, I would have been in a better position to defend myself a year ago than I am now because I had something then that I don't have now."

[McBride]:        It was fresher on my mind then.

[The Court]:      All right. Anything else?

[McBride]:        No, not really.

It appears from the outset of this colloquy that there was some confusion as to whether McBride wanted to proceed pro se, at least with regard to his two pro se motions. And, even though McBride initially had indicated that he wanted Shackelford to respond to the trial court's questions, it appears that McBride had a change of heart and voluntarily chose to answer the questions himself while eliciting input from Shackelford as he saw fit.

¶30.    As to whether McBride was sufficiently informed of all the various forms of prejudice, it should first be noted that the circuit court had no obligation to communicate such information to him.

¶31.    Regardless of whether or not McBride knew about the various forms of prejudice at trial, he touches upon a few of those in his appeal. McBride now adds that, during the lengthy delay he "was deprived of his liberty spending 'idle time' under a 'cloud of anxiety' while having no opportunity to 'gather evidence' on his own behalf." It is true that the anxiety associated with pretrial delay is a legitimate consideration under ***Barker***. ***Id.*** at 532-33. But it is also true that such anxiety is more serious for some defendants than others. ***Id.***

13

at 537 (White, J., concurring). Some degree of anxiety exists for every defendant, yet "many defendants . . . believe that time is on their side and . . . prefer to suffer whatever disadvantages delay may entail." *Id.* It is reasonable to assume that McBride falls within this latter category, given that he never demanded a trial. Additionally, McBride's assertions lack specificity. He does not describe how this anxiety manifestly impacted him or his family. *See id.* at 532 (noting that the detrimental impact of lengthy pretrial incarceration often means loss of employment or disruption of family life). And he does not explain or offer an example of the type of evidence that he was unable to gather.

¶32. In sum, we find that there is substantial evidence to support the trial court's finding that McBride suffered minimal, if any, prejudice.

¶33. After weighing each of the *Barker* factors, the trial court found that McBride's constitutional right to a speedy trial had not been violated:

> Weighing all of the [*Barker*] factors, finding that the delay is not attributable to any deliberate efforts on the part of the State, that the initial delay was due to the [McBride] being arrested during the middle of an on-going term of court, that [McBride] made no effort to assert his right to a speedy trial and finally, that [McBride], if suffering prejudice, suffering [sic] only minimum prejudice, if any, the court find[s] that while the delay associated with this case is presumptively prejudicial, it is not such that violates [McBride's] constitutionally guaranteed right to speedy trial.

¶34. Because the trial court's findings are supported by substantial, credible evidence, we affirm that McBride's constitutional right to a speedy trial was not violated.

**B.      Statutory right to a speedy trial**

¶35. In addition to the constitutional right to a speedy trial, Section 99-17-1 of the Mississippi Code creates a statutory right to a speedy trial. Miss. Code Ann. § 99-17-1 (Rev.

14

2007). It states that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2007). This Court has interpreted this statute to require that a defendant show not only that he was tried more than 270 days after his arraignment, but that he sustained prejudice as well. *Guice v. State*, 952 So. 2d 129, 139-40 (Miss. 2007).

¶36. Though the trial court did not mention McBride's statutory right to a speedy trial in its written order, McBride raised the issue in his motion for directed verdict of acquittal. Additionally, both McBride and the State addressed the issue in the pretrial hearing on McBride's motion. This issue, therefore, is properly before us.

¶37. McBride filed his first pro se motion for directed verdict of acquittal on December 28, 2007, well over 270 days after his August 10, 2006, arraignment. As already discussed, even then, he sought dismissal, not a trial. Regardless, this Court has held that, where a defendant fails to raise the statutory right to a speedy trial, he or she waives his or her right to complain about not being tried within 270 days of arraignment. *Walton v. State*, 678 So. 2d 645, 649-50 (Miss. 1996). This is especially true whenever the defendant fails to show that he was prejudiced by not being tried within the 270-day period. *Guice*, 952 So. 2d at 141-42 (citing *Walton*, 678 So. 2d at 650). McBride, as already discussed, has shown only minimal, if any, prejudice here.

¶38. Because McBride failed to assert his statutory right to a speedy trial, and because he showed no prejudice in the ability to conduct his defense, we find that he acquiesced in the

delay and waived his right to now complain that his statutory right to a speedy trial was violated.

> **II. The evidence was sufficient for a rational juror to have found beyond a reasonable doubt that the sexual battery occurred on a date within reasonable limits, or reasonably near, the dates alleged in the indictment and offense-tracking instruction.**

¶39. In reviewing a challenge to the sufficiency of the evidence, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed . . . .'" *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). The question is not whether this Court believes the evidence at trial established guilt beyond a reasonable doubt. *Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The relevant question, rather, "'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Bush*, 895 So. 2d at 843 (quoting *Jackson*, 443 U.S. at 315). We are to reverse if the facts and inferences "'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty . . . .'" *Bush*, 895 So. 2d at 843 (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). But if the evidence is of such weight and quality that "'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different

16

conclusions on every element of the offense,'" then it will be deemed to have been sufficient. ***Bush***, 895 So. 2d at 843 (quoting ***Edwards***, 469 So. 2d at 70).

¶40.    McBride argues that the State failed to prove that the sexual battery occurred "on or about or between January 2002 and December 2005," as charged in both the indictment and offense-tracking instruction.  He argues that the only evidence introduced at trial was that the victim, Mary Jones,[2] was eleven years old during the time of the sexual battery, and since she was born on November 11, 1989, the incident could not have occurred within the range of dates set forth in the indictment and offense-tracking instruction.

¶41.    Section 97-3-95, the statute under which McBride was indicted, contains two subsections.  Miss. Code Ann. § 97-3-95 (Rev. 2006).  The indictment did not specify which of these subsections under which the State intended to proceed.  It simply stated that:

1.    "on or about or between January 2002, and December 2005";
2.    "did unlawfully, wilfully and feloniously";
3    "engage in sexual penetration";
4.    "with [Mary Jones], a female child under the age of fourteen (14) years";
5.    "by inserting his penis into her vagina";
6.    "when he . . . was her father . . . ."

¶42.    At trial, the court issued an offense-tracking instruction, numbered C-11, which provided that:

The Defendant, JERRY MCBRIDE, has been charged by indictment with the crime of Sexual Battery.

If you find from the evidence in this case beyond a reasonable doubt that:

_____

[2] A fictitional name is used to protect the victim's identity.

17

1.   the Defendant, JERRY MCBRIDE, on or about or between January 2002 and December 2005, in Coahoma County, Mississippi, did unlawfully, willfully[,] and feloniously, engage in sexual penetration by inserting his penis into the vagina of [Mary], and

2.   that [Mary] was a female child,

3.   under the age of fourteen (14) years of age,

4.   when the Defendant, JERRY MCBRIDE, was the father of [Mary], then you shall find the Defendant guilty of Sexual Battery.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.

¶43.   Both the indictment and the offense-tracking instruction, therefore, reflected that the sexual battery occurred "on or about or between January 2002 and December 2005." But the offense could not have occurred within these specific dates if Mary had been eleven years old at the time it happened.

¶44.   Mary maintained at trial that she was "around eleven" at the time of the first incident. She added at one point, though, that she "could have been twelve." Mary acknowledged that, in December 2005, she told a Department of Human Services (DHS) interviewer that she had been thirteen or fourteen at the time of the first incident. She explained at trial, however, that she had not been sure of her age at the time of the DHS interview. Mary's difficulty recalling exact times and dates is not uncommon in child-abuse cases. *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005).

¶45.   Mary turned twelve on November 11, 2001. Thus, if she had been eleven at the time of the first incident, the incident would have had to have occurred between November 11, 2000, and November 11, 2001. The sexual battery then feasibly could have occurred the first week or so of November 2001 – two months or so before January 2002.

18

¶46.   We must determine whether this variance in dates between the indictment and offense-tracking instruction and the proof adduced at trial renders the evidence insufficient to support McBride's conviction.  For the reasons discussed below, we conclude that it does not.

¶47.   In ***Daniels v. State***, 742 So. 2d 1140, 1142-43 (Miss. 1999), a defendant challenged the sufficiency of the evidence based on an alleged variance between the dates in the indictment and the date proven at trial.  In that case, the Court concluded that there was, in fact, sufficient evidence to support that the crime had occurred within the timeframe set forth in the indictment.  ***Id.*** at 1143.  But the Court added it would have upheld the conviction even if the dates alleged in the indictment had been incorrect.  ***Id.***  The Court explained that "'an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'"  ***Id.*** (quoting ***United States v. Cochran***, 697 F.2d 600, 604 (5th Cir. 1983)).

¶48.   According to ***Cochran***, the Fifth-Circuit case quoted in ***Daniels***, the date(s) proven at trial may "within reasonable limits" vary from date(s) alleged in the indictment.  ***Cochran***, 697 F.2d at 604.  In defining "reasonable limits," a court must consider whether the defendant had adequate notice of the charge(s) against him so that he was able to prepare his defense and not be surprised at trial.  ***Id.***  The court must also consider whether the defendant is protected against a second prosecution for the same offense.  ***Id.***  Basically, the variance in dates must not unfairly prejudice the defendant.  *See **Cochran***, 697 F.2d at 604.

19

¶49. In this case, the State's failure to establish that the sexual battery occurred precisely within the January 2002 to December 2005 timeframe did not prejudice McBride in any way. For example, he never asserted an alibi defense; thus, any failure to prove the alleged dates could not have affected or hampered such a defense. Moreover, he does not allege inadequate notice of the charges against him, contend that he was unfairly surprised, or raise double-jeopardy concerns.

¶50. As already discussed, if Mary had been eleven at the time of the first incident, the crime plausibly could have occurred within two months or so of January 1, 2002. Given the lack of prejudice here, we find that a period of two months is within reasonable limits of the January 2002 to December 2005 timeframe.

¶51. The indictment and offense-tracking instruction's use of "on or about" language adds additional support for our decision. Where, as here, "on or about" language is used in an indictment, the government is not required to prove an exact date(s) so long as a date reasonably near is established. *United States v. Mata*, 491 F.3d 237, 243 (5th Cir. 2007) (quoting *United States v. Valdez*, 453 F.3d 252, 260 (5th Cir. 2006)); *see also Real v. Shannon*, 600 F.3d 302, 308 (3d Cir. 2010); *United States v. Benson*, 591 F.3d 491, 497 (6th Cir. 2010); *United States v. Hinton*, 222 F.3d 664, 672-73 (9th Cir. 2000); *United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998); *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989); *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988); *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987).

¶52. Because a period of two months is within reasonable limits of, or reasonably near, the January 2002 to December 2005 timeframe, we find that the variance between the indictment

and offense-tracking instruction and the proof at trial does not render the evidence insufficient to support McBride's conviction.

## CONCLUSION

¶53. Because we find that neither McBride's constitutional nor statutory right to a speedy trial was violated, and because the evidence was sufficient to enable a reasonable juror to conclude that the sexual battery occurred within reasonable limits, or reasonably near, the timeframe set forth in the indictment, we affirm the trial court's conviction and sentence.

¶54. **CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KING, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

*[Our constitutional] safeguards [are] the result of the wisdom of centuries of experience, [and they] must be, by the courts, sacredly upheld, as well in [the] case of the guiltiest as of the most innocent defendant answering at the bar of his country.*[3]

¶55. Whatever differences I may have with the majority, we surely agree on at least three things: (i) Only a grand jury may indict an accused; (ii) the grand jury must indict for particular conduct *it* believes constituted a particular crime; and (iii) absent the accused's consent otherwise, the State may seek a conviction for *that* crime, and no other.[4]

---

[3] ***Tennison v. State***, 31 So. 421, 422 (Miss. 1902).

[4] Although McBride has never claimed -- even on appeal -- that his constitutional right to due process was violated, because it is a fundamental right, it is appropriate for this Court to raise it *sua sponte* under plain-error review. ***Lambert v. State***, 462 So. 2d 308, 311

¶56.   In this case, whether McBride was convicted of the crime for which the grand jury intended to indict him is a matter of pure speculation. Although I would not -- at this point -- reverse on this issue, I write separately to express my view. But because McBride's trial was held in clear violation of Section 99-17-1 of the Mississippi Code, I would reverse his conviction. Because the majority refuses to do so, I respectfully dissent.

**I.    The wording of McBride's indictment makes it impossible to know if he was convicted for the same conduct for which he was indicted.**

¶57.   More than eighty-five years ago, Justice Ethridge succinctly stated the principle on which I now stand:

> I have never heard yet that the court could charge a person with one crime only, and convict him of a different thing from that for which he was indicted, even though the defendant's acts are made crimes in the same statute. Each act charged as being an offense in such cases must be sufficiently charged to give the information required by the Constitution. The person must be put on notice of what the state is going to try him for. He cannot be charged with one thing under an indictment and tried for another without violating the Constitution. . . .[5]

¶58.   A criminal defendant certainly has a constitutionally protected right to due process of law, which requires that he be "fairly inform[ed] . . . of the charge against which he must defend."[6] If that principle means anything at all, it must surely mean that a criminal defendant may not be tried for or convicted of a crime other than the one for which he was indicted. Stated another way, when a defendant is indicted for a specific crime, it matters not if the

_____

(Miss. 1984).

[5] ***Sanders v. State***, 105 So. 523, 531 (Miss. 1925) (Ethridge, J., dissenting).

[6] ***Jackson v. State***, ___ So. 3d ___ 2010 WL 1239528, at *10 (Miss. Apr. 1, 2010) (citing ***Berry v. State***, 996 So. 2d 782, 785 (Miss. 2008); ***Quang Thanh Tran v. State***, 962 So. 2d 1237, 1240 (Miss. 2007)).

22

State produces at trial overwhelming evidence of guilt of some *other* crime. We are duty-bound to reverse a conviction, regardless of the evidence, if the defendant was not indicted for the crime for which he was convicted.

¶59. The majority correctly observes that the grand jury indicted McBride for a crime that requires the victim to be under the age of fourteen.[7] But the indictment also charged that the crime was committed within a four-year period, more than half of which was past the victim's fourteenth birthday. And at trial, the State (for reasons not entirely clear) produced evidence of sexual misconduct that allegedly had occurred during those latter two years.

¶60. The State, for its own reasons, chose to seek an indictment against McBride for a crime that requires the victim to be under fourteen years old. And the indictment -- drawn up by the State and handed down by the grand jury -- alleged the period of time during which the crime occurred. I have no way of knowing why the State included in the indictment the two-year period of time after the victim reached her fourteenth birthday -- and thus a period of time during which the crime could not have been committed. But since the State did choose to include that period of time in the indictment, I must conclude either that it was done intentionally, or that it was a mistake.

¶61. I am unwilling to presume that the State intentionally included erroneous dates, so the State apparently was unaware that Mary had turned fourteen in November 2003. This is especially troubling because evidence of more than one incident of sexual misconduct was presented at trial, and the second very well may have been the conduct for which the grand jury agreed to indict. If so, the indictment was fatally defective because the second incident

---

[7] *See* Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2006).

23

occurred after Mary's fourteenth birthday -- a time which the conduct did not violate the statute named in the indictment.

¶62.    Mary testified about two sexual encounters with McBride, one that occurred when she was eleven and another that occurred when she was fifteen.[8] Interestingly, the *second* incident is squarely within the timeframe charged in the indictment,[9] while the *first* incident -- the one for which McBride was ultimately convicted -- was not.[10] So if the State truly was unaware of the date of Mary's fourteenth birthday, it very well might have presented the grand jury with evidence of McBride's actions that occurred after that date -- just as it did at trial.

¶63.    Under these circumstances, we have no way of knowing whether McBride was convicted of the conduct and crime for which he was indicted.  Because the appellate record contains no evidence concerning the grand-jury proceedings, and because McBride has presented no argument on this issue, I can only speculate.  On the record and briefs currently before us (and assuming McBride was indicted for the first incident of sexual misconduct, and not the second) I agree with the majority that there was sufficient evidence to sustain the conviction.

---

[8] Maj. Op. at ¶ 2.  The day before trial, McBride's attorney moved *in limine* to exclude evidence of the second sexual incident, arguing that it was not relevant to whether the first incident occurred and that it was "more prejudicial than probative" under Mississippi Rules of Evidence 403.  It does not appear that the trial court ruled on this motion on the record, but McBride's attorney did not object during Mary's testimony when she was asked about the second incident.  After Mary's testimony had concluded, the court asked the State its purpose for introducing evidence of the second incident, and the State replied: "That was submitted . . .  to show plan, intent, motive . . . under [Rule] 404(b)."

[9] Mary was fifteen between November 11, 2004, and November 11, 2005.

[10] Mary's twelfth birthday was November 11, 2001, approximately two months before the earliest date charged in the indictment.  *See* Maj. Op. at. ¶ 45.

24

¶64.    But I would not preclude McBride from raising the due-process issue before this Court in a motion for post-conviction relief, through which procedure we may review and consider the grand-jury transcript and other evidence not in this appellate record.  In the event that McBride can show sufficient evidence that the grand jury indicted him for a crime other than the one of which he was convicted, he would be entitled to relief.

## II.    The State violated McBride's statutory right to a speedy trial.

¶65.    The trial court erred in denying McBride's pretrial motion to dismiss for violation of the Mississippi Speedy-Trial Statute.[11]  Over the years, numerous decisions of this Court have interpreted this statute's clear language into meaninglessness.  It is long past time for us to apply the plain meaning of the text -- as it was written by the Legislature.

¶66.    Mississippi Code Section 99-17-1 reads, in its entirety:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.[12]

¶67.    Under a plain reading of the statute, a trial must occur within 270 days of the defendant's arraignment unless two requirements are met.  First, good cause must be shown.  Second, a continuance must be "duly granted by the court."  When these two requirements are not met, if "the accused is not tried within 270 days of his arraignment, the defendant is entitled to dismissal."[13]

---

[11] Miss. Code Ann. § 99-17-1 (Rev. 2007).

[12] *Id*.  Trial within 270 days of arraignment is also required by Miss. Unif. Cir.& County Ct. R.8.01.

[13] **Reynolds v. State**, 784 So. 2d 929, 933 (Miss. 2001) (citing **Nations v. State**, 481 So. 2d 760, 761 (Miss. 1985)).

¶68.   Despite our well-settled precedent requiring the strict application of clear, unambiguous statutes, [14] this Court -- apparently unfettered by "the most fundamental rule of statutory construction"-- has subjected the Speedy-Trial Statute to no small amount of judicial evolution.

¶69.   For instance, with no statutory authority to do so, this Court now requires that a defendant raise a violation of the Speedy-Trial Statue within some undefined period or risk "waiv[ing] his right to complain" about the violation.[15]  And if the defendant manages to do that properly, we still will deny him relief unless he can adequately convince the Court that the illegal delay actually prejudiced his defense -- another requirement imposed by this Court without legislative authority.[16]  Let's review how we got here.

¶70.   The Speedy-Trial Statute, passed in its present form in 1976, was first discussed in *Payne v. State*,[17] which held that the statute "is plain and unambiguous" and that, when a defendant is not tried within the mandated 270 days, "[t]he only question [that] remains is

---

[14] *Buckel v. Chaney*, 47 So. 3d 148, 158 (Miss. 2010) (citing *State ex rel. Hood v. Madison County Bd. of Supervisors*, 873 So. 2d 85, 90 (Miss. 2004); *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss.1992)) ("The most fundamental rule of statutory construction is the plain meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms.").

[15] *Walton v. State*, 678 So. 2d 645, 649 (Miss. 1996).  *See also Guice v. State*, 952 So. 2d 129, 142 (Miss. 2007) ("a defendant may effectively waive his right to complain of not being tried within the 270-day period set out in Miss. Code Ann. § 99-17-1, when the defendant does not request or assert his right to a speedy trial or object to a delay").

[16] *See, e.g., Guice*, 952 So. 2d at 139-40; *Jones v. State*, 776 So. 2d 643 (Miss. 2000); *Walton*, 678 So. 2d at 650; *Jasso v. State*, 655 So. 2d 30, 35 (Miss. 1995); *State v. Harrison*, 648 So. 2d 66, 71 (Miss. 1994).

[17] *Payne v. State*, 363 So. 2d 278 (Miss. 1978).

whether or not the delay comes within the framework of the exceptions in the statute."[18]  If

not, the defendant is entitled to dismissal.[19]  At least as recently as 1991, the statute was

applied in this clear, straightforward manner.[20]  Then, the Court began to stray.

¶71.    In *State v. Harrison*,[21] decided in 1994, this Court, with no authority whatsoever to do

so, decided that a violation of the statute did not really require dismissal of the case unless the

delay prejudiced the defendant.  This Court stated that, where the State has violated the plain

wording of the statute,

> dismissal with prejudice is not required by the statute *unless the state* upon the
> finding of a violation *fails to persuade the court that the violation did not
> prejudice* the defendant's ability to defend against the charge and that the state
> did not deliberately engage in oppressive conduct.  If the court is so persuaded
> the remedy shall be dismissal without prejudice to reindictment.[22]

¶72.    So this Court's initial judicial amendment to the statute placed the burden on the State

to *disprove* prejudice.  And in cases where the State was able to disprove prejudice, the case

was dismissed without prejudice to reindictment, so the State had the opportunity to get it

---

[18] ***Id.*** at 279.

[19] ***Id.*** (concluding that since delay in excess of 270 was not covered by a continuance, "[t]he cause is therefore reversed and appellant discharged").

[20] *See* **Ford v. State**, 589 So. 2d 1261, 1263 (Miss. 1991) ("Since more than 270 days passed between appellant's arraignment and his trial and there is no showing by the State in the record of good cause for the delay, it follows that this case must be reversed and the appellant discharged.").

[21] ***State v. Harrison***, 648 So. 2d 66 (Miss. 1994).

[22] ***Id.*** at 71 (emphasis added).

right a second time.[23]   But where the State could not disprove prejudice, the case was dismissed with prejudice.

¶73.   The camel's nose was under the tent.  In a 1996 case, this Court further amended the statute to provide that the Speedy-Trial Statute was *not violated at all* absent a showing of prejudice.  And where **Harrison** had put the burden on the State to disprove prejudice, **Walton** shifted that burden to the defendant to prove affirmatively that he was prejudiced.[24]  **Walton** also brought with it the interesting revelation that a criminal defendant loses his statutory right unless he "asserted his right to a speedy trial or objected to a delay," even suggesting that the defendant may have to raise the issue *before* the State's 270 days have expired.[25]  As an

---

[23] *Id.*

[24] **Walton**, 678 So. 2d at 650 (quoting **Turner v. State**, 383 So. 2d 489, 492 (Miss. 1980) (Lee, J., dissenting) ([T]he provisions of . . . Section 99-17-1 only require that an accused be discharged in denying him a speedy trial which results in prejudice and in denial of a fair trial to him. . . . Walton waived his right to complain about not being tried within 270 days, because he neither requested nor asserted his right to a speedy trial or objected to a delay and prejudice has not been shown by Walton.  Accordingly, his sentence is affirmed, having no basis for reversal." .

[25] *Id.* at 649-50 ("Walton never raised the speedy trial issue *within the time frame prescribed by the statute*.") (emphasis added).  The Court of Appeals repeatedly has relied on **Walton** for this proposition.  *See, e.g., Lipsey v. State,* 50 So. 3d 341, 352 (Miss. Ct. App. 2010) ("[I]f a defendant fails to raise this issue within 270 days of his arraignment, he 'effectively acquiesced to the delay.'"); **Ray v. State**, 27 So. 3d 416, 423 (Miss. Ct. App. 2009) ("[I]f a defendant fails to raise the statutory right to a speedy trial within 270 days of his arraignment, he acquiesces to the delay."); **Loi Quoc Tran v. State**, 999 So. 2d 415, 417 (Miss. Ct. App. 2008) ("[W]e have held that if a defendant fails to raise the statutory right to a speedy trial within 270 days of his arraignment, he acquiesces to the delay."); **Mims v. State**, 856 So. 2d 518, 522 (Miss. Ct. App. 2003) ("Mims failed to raise this issue within 270 days of his arraignment and, therefore, acquiesced to the delay."); **Malone v. State**, 829 So. 2d 1253, 1257 (Miss. Ct. App. 2002) ("[Malone] failed to raise this issue within 270 days of his arraignment and, thus, effectively acquiesced to the delay.")

28

interesting observation, I know of no other statutory violation that must be raised before the violation actually occurs.

¶74.   This Court has followed these ill-conceived and incorrectly decided cases for the past fifteen years.  And for those who believe the Legislature erred in passing the statute in the first place, this Court's amendments have worked well.  Since *Walton*, notwithstanding numerous cases in which defendants have been brought to trial long after expiration of the statute's 270-day limit, this Court has never once held that the State violated a defendant's statutory right to a speedy trial.

¶75.   These unfounded and unauthorized judicial amendments to the statute have no place in our jurisprudence.  It is facially absurd to expect a defendant to raise the Speedy-Trial-Statute issue *inside* the 270-day window because, at that point, the statute has not yet even been violated.  And beyond that, nothing in the statute even remotely suggests that a defendant will be deemed to have waived the statute unless he demands a speedy trial within some arbitrary time frame.  This statute is really no more than a statute of limitations.[26]  Just as a cause of action for trespass must be commenced within two years of the offending action,[27] a criminal trial must be commenced -- absent the statutory exceptions -- within 270 days of arraignment.  I know of no other statute of limitation that must be raised before it expires.

---

[26] *Folk v. State*, 576 So. 2d 1243, 1245 (Miss. 1991) ("Our 270 day rule is in form and nature not unlike a statute of limitations.  It reflects a societal imperative for prompt trials.  Beyond this the rule confers a right upon the accused which he may claim no matter how inconvenient society may otherwise deem it.").

[27] Miss. Code Ann. § 95-5-29 (Rev. 2004).

29

¶76. The prejudice requirement is likewise erroneous. Nothing in the text of the statute even hints that prejudice must be shown, for any purpose. And even if we assume that prejudice must be shown, there is still no indication in the statute that the defendant should bear the burden of establishing that prejudice. But even if the statute did require the defendant bear the burden of establishing prejudice, this Court repeatedly and consistently has held that when a delay exceeds eight months -- or approximately 240 days -- the defendant is *legally presumed* to have been prejudiced.[28] So even if we are to pretend that the statute requires the defendant to prove prejudice, there is no reason to believe that the defendant should not be entitled to the presumption of prejudice *created by this very Court*.

¶77. Mississippi's Speedy-Trial Statute -- which already is one of the most lenient statutes of its kind in the country[29] -- does not need this Court's help. If trying a defendant within 270 days is too onerous a burden, or if dismissal with prejudice in the wake of a violation is too harsh a remedy, Mississippi already has a legislative body, and it doesn't need another one. The Legislature is perfectly free to do with the Speedy-Trial Statute what it will. We are not.

¶78. I would overrule **Harrison**, **Walton**, and their progeny, and hold that the plain, unambiguous language of Section 99-17-1 requires that all defendants be tried within 270 days of arraignment unless the State can show good cause, and the trial court duly enters an order of continuance.

---

[28] Maj. Op. at ¶ 7 (citing **Stark v. State**, 911 So. 2d 447, 450 (Miss. 2005); **Smith v. State**, 550 So. 2d 406, 408 (Miss. 1989)).

[29] *See, e.g.,* **Folk**, 576 So. 2d at 1245 n. 3 (comparing Section 99-17-1 to similar statutes in other jurisdictions).

¶79. Turning then to the facts of this case, McBride was arraigned on August 10, 2006. He was not tried until February 19, 2008 -- a span of 558 days. McBride requested a single continuance on February 14, 2008 (five days prior to trial), which was granted. Other than that, there is no indication in the record either that the State requested, or that the trial court granted, any continuances. So 553 days count against the State, more than twice the statutory limit. Consequently, the trial court erred in denying McBride's motion to dismiss. I would reverse McBride's conviction and order the charge dismissed with prejudice.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION**.